IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SEABOARD FOODS LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | **CIVIL ACTION NO. _____** |
| | § | |
| v. | § | **ADMIRALTY** |
| | § | |
| **MSC MEDITERRANEAN SHIPPING COMPANY S.A.,** | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, **Seaboard Foods LLC** ("Seaboard") and for its Complaint against MSC Mediterranean Shipping Company S.A., avers as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, in particular, the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 note ("COGSA"). This Court also has jurisdiction over this action under 28 U.S.C. § 1333, as this is a claim that arises under this Court's admiralty and maritime jurisdiction.

2. Plaintiff Seaboard, as the shipper and consignee, is a party to two contracts of affreightment evidenced by the bills of lading more fully described below, under which the following shipments were involved:

   a. 374 cases of frozen pork front feet ("Cargo #1"), part of a total shipment of 1,570 cases, were to be shipped from Kansas City, Kansas to the Tianjin Xingang Port in China ("Shipment #1); and

      b. 1,570 cartons of frozen pork ears ("Cargo #2") were to be shipped from Guymon, Oklahoma to Shanghai, China ("Shipment #2);

3.    Defendant MSC Mediterranean Shipping Company S.A. ("MSC") is a foreign entity and international shipping line engaged in the common carriage of merchandise by water for hire. At all material times MSC was engaged in the business of carriage of cargo in multiple modes of transport and with respect to the cargo in question contracted to provide multimodal carriage for two shipments from the U.S. to China under contracts of carriage that contemplated substantial ocean carriage. MSC's terms and conditions include a Southern District of New York forum selection clause which is said to apply exclusively where the carriage contracted for is to or from the U.S. This Court has jurisdiction over MSC who conducts business as a common carrier of cargo for hire, and as a provider of services related thereto. MSC maintains a place of business within this district through its general agent, MSC Mediterranean Shipping Company (USA) Inc., located at 420 Fifth Avenue, 8th Floor, New York, New York 10018-2708.

4.    On or about June 17, 2022, Cargo #1, loaded into a temperature-controlled container, was delivered in good order and condition along with a second container to the exporter at the origin rail ramp under Bill of Lading no. 2022-0012547, which was signed and delivered to Seaboard. A copy of the bill of lading is attached hereto as Exhibit 1. This transport was part of a larger transport arranged with MSC under Sea Waybill No. MEDUU5965469, Booking Reference 038RCS1218745. A copy of sea waybill is attached hereto as Exhibit 2. At the time Seaboard released possession of Cargo #1, the temperature readings in the Cargo's container were confirmed at -10°F, the requisite setting.

5.    The container was loaded onto rail on June 22, 2022 in Kansas City, Kansas, and transported to Long Beach, California on July 19, 2022. On August 3, 2022, the container was loaded on board the M/V MAERSK ALFIRK-230S, which carried it to Qingdao, China and

discharged it on August 21, 2022. The container was then loaded aboard the M/V MSC LENI-FJ234W on August 27, 2022 and carried to Busan, South Korea, where it was discharged on August 29, 2023. After remaining at port in Busan, South Korea for approximately one month, Cargo #1 was loaded onto the M/V MSC SOTIRIA on September 30, 2022 and delivered to Tianjin, China on or about October 12, 2022.

6. After arriving in Tianjin, the cargo was discovered to have mold, indicating that the required temperature had not been maintained throughout transit. Photographs depicting the damage to Cargo #1 are attached hereto as Exhibit 3. As a result, Cargo #1 was deemed unfit for human consumption and was destroyed.

7. Seaboard filed a Standard Form for Presentation of Loss and Damage Claim with MSC for the damage to Cargo #1 on or about March 16, 2023, a copy of which is attached as Exhibit 4. To date, MSC has not paid the claim. Pursuant to an email from MSC dated November 3, 2023, MSC granted a formal time extension for this claim to January 12, 2024. A copy of that correspondence is attached hereto as Exhibit 5.

8. On or about July 27, 2023, Cargo #2, loaded into temperature-controlled container no. TRIU8180719, was delivered in good order and condition to the exporter at the origin rail ramp under Bill of Lading no. 2023-0017309, which was signed and delivered to Seaboard. A copy of the bill of lading is attached hereto as Exhibit 6. At the time Seaboard released possession of the cargo, temperature readings in the container were confirmed at -10°F, the requisite setting.

9. The container with Cargo #2 arrived at the MSC Terminal at the Port of Los Angeles on or about August 4, 2023, and was unloaded from the rail flat and gated into the terminal on August 8, 2023. It was thereafter loaded on board the CEZANNE on August 19, 2023.

10.  On August 28, 2023, MSC notified Seaboard that container no. TRIU8180719 had malfunctioned, and that MSC had discharged the unit at the Port of Long Beach on August 25. Because the CEZANNE had set sail for China from Los Angeles, the discharge of the container at the Port of Long Beach was in violation of the Jones Act, causing Cargo #2 to be detained by Customs. The container with Cargo #2 thus sat at the terminal until it was released from Customs on September 11, 2023, and arrangements were thereafter made to transload Cargo #2 into a replacement container at PCC Cold Storage in Oakland, California.

11.  On September 12, 2023, Techno Marine Services conducted a joint survey of Cargo #2 at PCC Cold Storage during the transloading process. At the time of the inspection, the container unit was not plugged into the wall supply and was off. Although Cargo #2 was to be maintained at a temperature of -10°F, recorded temperatures at the time of inspection ranged from 28.1°F to 38.6°F and the top tier cases of Cargo #2 were noted to have heavy evidence of thawing. A copy of the survey is attached hereto as Exhibit 7. Based on these temperatures and anticipated frost damage to Cargo #2 due to refreezing, Cargo #2 was determined to not be viable for sale. It was therefore transloaded and returned to Guymon, Oklahoma, where it was rendered.

12.  Seaboard filed a Standard Form for Presentation of Loss and Damage Claim with MSC for Cargo #2 on or about November 14, 2023, a copy of which is attached as Exhibit 8. To date, MSC has not paid the claim.

13.  The damage to Cargo #1 and Cargo #2 was not caused by any act or omission of Seaboard, but instead was caused by the negligence, fault, breach of duty, or breach of contract or warranty of MSC.

A1070\A05895\274907863

14. The bills of lading, the sea waybills, and/or the obligations of the parties are governed by the general maritime law of the United States and/or the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, note.

15. Seaboard was the shipper of both Cargo #1 and Cargo #2 (collectively, the "Cargo") and brings this action on its own behalf and as agent or trustee on behalf of and for the interest of all parties who are or may become interested in the Cargo in question, as their respective interests may ultimately appear, and Seaboard is entitled to maintain this action.

16. By reason of the premises, Seaboard has sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in the following amounts:

   a. For Cargo #1, the sum of $19,559.50, exclusive of freight and other charges related to the shipment, plus $7,258.70 in tariffs and $2,413.60 in VAT related to Cargo #1, for a total of $29,231.80 (*see* Ex. 4); and

   b. For Cargo #2, the sum of $101,335.65, exclusive of freight and other charges related to the shipment, plus $2,784.25 for the survey, $3,264.52 for refrigerated storage, and $3,615.23 for transportation related to Cargo #2, for a total of $110,999.65 (*see* Ex. 8).

17. Seaboard has performed any and all obligations required as a condition precedent to bringing this action.

WHEREFORE, Plaintiff Seaboard Foods LLC prays that:

1) Process in due form of law issue against Defendant MSC Mediterranean Shipping Company (USA) Inc., citing it to appear and answer this Complaint;

2) Judgment be entered in favor of Plaintiff, Seaboard Foods, and against Defendant, MSC Mediterranean Shipping Company S.A., for all sums shown to be due and owing at trial, together with interests and costs; and

3) That Plaintiff, Seaboard Foods be awarded such other and further relief as it may be entitled to receive.

Dated: January 12, 2024.

                                        */s/ Boris Brownstein*
                                        Boris Brownstein
                                        CLARK HILL PLC
                                        830 Third Avenue
                                        Suite 200
                                        New York, NY 10022
                                        Phone: (609) 785-2923

                                        210 Carnegie Center, Suite 102
                                        Princeton, NJ 08540
                                        bbrownstein@ClarkHill.com
                                        *Counsel for Plaintiff Seaboard Foods*